Eric Watkins
7990 Hampton Blvd, Apt 110
North Lauderdale, Florida
33068

FILED BY ___ D.C.
AUG 24 2020
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - FT. LAUD.

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

ERIC WATKINS
    Plaintiff,

V                           Case No. 18-63035

SERGEANT M. BIGWOOD,
OFFICER T. YOPPS #353,
OFFICER SAMUEL RAMOS,
CITY OF LAUDERHILL
    Defendants.

## Third Amended Complaint

### Jurisdiction

(1) Jurisdiction is invoked, pursuant to 42 U.S.C. § 1983.

(2) Plaintiff, Eric Watkins, is a resident of Florida, whose mail address is 7990 Hampton Blvd, Apt. 110 North Lauderdale FL. 33068.

(3) Defendant M. Bigwood is employed at the Lauderhill police department as a sergeant. At the time of the alleged

claim in the complaint defendants acted in his individual capacity while on duty. Thus Plaintiff at this time is suing him in his individual and official capacity.

(4) Defendant Officer T. Yopps #353 is employed at the Lauderhill police department as an officer. At the time of the alleged claim in the complaint the defendant acted in his individual capacity. Thus at this time Plaintiff is suing him in his individual and official capacity.

(5) Defendant Samuel Ramos is employed at the Lauderhill police department as an officer. At the time of the alleged claim he acted in his individual capacity. Hence plaintiff is suing him in his individual and official capacity.

(6) Defendant City of Lauderhill is the owner of the Lauderhill police station and is liable for the defendants violation of plaintiff's constitutional rights. Plaintiff is suing the city of Lauderhill in their individual and official capacity.

### Nature of the Case

(7) On 12/15/14 I was falsely arrested by the police officer defendants of needing to be Baker acted because of my exercise of my right to be free speech.

### Cause of Action

(8) I allege that my claims arise under the following constitutional provisions of laws of the United States and that the following facts forms the basis of my allegations.

### Counts one

(9) It is Plaintiff's complaint that on December 15, 2014 Defendants Bigwood, Yopp and Ramos, all police officers of Lauderhill police department, did willfully, intentionally and with malicious intent to cause hardship and mental anguish on me, did violate my Fourth, my Fourth Amendment right to be free from arrest and seizure without probable cause when they in bad faith arrested and seized Plaintiff pursuant to Florida statute 394.463 (the Baker Act) inspite of the fact that no mental health professional certified that Plaintiff met the criteria for involuntary examination. There was no other valid or viable reason(s) to believe that Plaintiff had a mental illness which caused him to refuse voluntary examination and none of the defendants ever gave Plaintiff a conscientious explanation and disclosure of the purpose of examination and there were no reliable evidence to support that Plaintiff met the criteria for involuntary examination.

3 of 19

## Counts two

(10) It is Plaintiff's Complaint that on December 15, 2014 Defendant's Bigwood, Yopps and Ramos did willfully intentionally and with malicious intent violate Plaintiff's First Amendment Right to free speech when they all Baker Acted Plaintiff because of his exercise of his free speech at the parks. There was no valid, viable or reliable reasons or evidence to Justify involuntary examination and Baker Acties.

## Supporting Facts

(11) On December 15, 2014 at approximately 9am I patroned the mullins Park in Lauderhill Florida. I parked in a Parking space approximately 60 feet away from the park's walk way where patrons walk on excerise. I was sitting out side my car behind a made up table singing Boom bye bye while preparing to prepare Breakfast.

(12) There were several patrons walking around the park excersing and I was singing the song. This had been my routine for more than a year prior.

(13) Amongst those several patrons were two who took offense to the lyrics of the song. They were later identified as Tanika Beckford and Jermaine A. Jackson.

(14) Both Beckford and Jackson were walking and then Jogging around the parks drive way and walk way while I was by my car singing.

4 of 19 pp

15) Jackson stopped walking and began to curse me and then asked me for the second time if I was speaking to him. I ignored him and kept singing.

16) Because I ignored his rude and demanding question Jackson got made and attempted to approach and attack me. Beckford stopped him by getting in front of him and forcefully restrain him.

17) I continued to sing the song, supra, and they continued to curse me and then began to walk away and out the park while cursing me.

18) While leaving the park Beckford and Jackson stated to me that they were going to call the police and get me arrested for singing the antigay song in the park.

19) Some time after 10 am while I was actually about to prepare breakfast Defendant Ramos and officer Manchola-Whoo I had a history with - drove into the park and both approached me. Ramos informed me that two patrons had called 911 and complained that I was in the park disturbing the peace.

20) In a calm cool and collected manner I informed defendant Ramos that I was video taping the conversation between him and myself. Ramos said it was okay. I then informed him that I was not creating a disturbance in the park. That I was merely singing a song boom bye bye in a faggot boy head and the two patrons

5 of 19 ff

got upset and started cursing me.

21) Ramus then informed me that his supervisor was on his way to talk to me. Shortly after Bigwood arrived and informed me that the two patrons of the park, Beckford and Jackson, complained that I was in the park saying antigay slurs out loud while waving a knife in my hands.

22) I stated to defendant Bigwood that I was singing an antigay song out loud by Reggae Artist Buju Banton called Boom bye bye in a Batty boy head. That Beckford and Jacksons' were walking and jogging through the park while I was singing by my car. Then both Jackson and Beckford stopped walking and jogging and walked over in the area where I was singing and began to curse me about the song I was singing. I ignored them and continued to sing. Jackson then asked me if I'm talking to him. I ignored him and continued singing the song. That Jackson again became more irate and attempted to aggressively approach me but Beckford forcefully restrained him. I continued to sing the song and they continue to curse me while walking away and leaving the park.

23) Bigwood then asked me if I possessed a knife. I told him I have two knives both of which I use to prepare daily meals because I'm homeless and lives out of my car.

24) Defendant Bigwood then ask me where are the knives? I told him in my car in the food crates.

6 of 19 PP

25) Bigwood the ask me if I had the knives out in my hands waving while I was singing. I told him know I never had any of the knives out because I did not start to prepare my breakfast as yet.

26) Then he asked me how does Beckford know I have a knife. I stated to him I homeless and every day I'm in the park with my desk outside my car and that I'm either doing writing or preparing my meals.

27) Bigwood then ask me to sing the song from him. I began singing "World is in trouble anytime Buju Banten comes faggot boy set up. I's like Boom bye bye in a faggot boy head rude boy nah promote no faggot boy dem have to dead." Bigwood then stopped me from singing and said okay and walked away and went to Beckford and Jackson and spoke to them for a while.

28) Bigwood then returned to me and informed me that because of my singing in parks, the conduct complained of by Beckford and Jackson and the April 17, 2014 incident at another park he believed I needed a mental health examination.

29) I explained to Bigwood that I did not before the way Beckford and Jackson complained that I have a constitutional right to sing the antigay song at the park and that the April 17, 2014 incident at the other park did not involve any patron complaining me, that it involved a park manager wanting to officially trespass me from the park because I had been verbally trespassed

a year prior and had returned to the park a year later after being cleared to do so by Lauderhill police department.

(30) Defendant Bywood was shocked by this information and went to speak to officer manchola because he was the officer involved in the April 17, 2014 incident in which he was called to the other park.

(31) Defendant Bywood returned to me after speaking with Manchola and informed me that manchola confirmed what I had stated but that he still believes that I need a mental evaluation because of my constant singing of the antigang song in parks and because he believes I was waving the knife as Beckford had claimed.

(32) Only one witness Beckford ever stated that I had a knife in my hand waving while singing. Jackson never made such a claim.

(33) Bywood then asked me if I could volunteer to go to a mental facility for a mental examination. I refused to volunteer to go to any mental facility and again stated to Bywood that I was only singing a song in the park and that it was not directed at anyone. That there were other patrons in the park and no one complained or felt that it was directed at them and that Beckford and Jackson were lying.

(34) Bywood then informed me that under the Baker Act he could force me to go. I then repeated to him

8 of 19

that I'm not volunteering to go to any mental facility

(35) Biswood then ordered defendant Ramos and Yopps to arrest me. Without any resistance from me Yopps and Ramos willfully tightened the handcuffs on my wrist very tight and Ramos walked me to his police car and put me inside. Ramos also confiscated my cell phone from me. I video taped the whole encounter up to when Yopps and Ramos arrested me.

(36) While in the police car I would repeatedly ask Ramos to slacken up the handcuffs and he would promise to do so but never did. I remained in excruciating pain for approximately 30-45 minutes before Ramos took me to the mental facility.

(37) During the whole incident and encounter with the police and the defendants I was never loud, angry or rude and I never became combative and never used obscenities to any of the officers.

(38) None of Beckford and Jackson's claims regarding my behavior was true nor reliable and none of them ever gave Biswood nor the Lauderhill police department a sworn affidavit regarding their claims about me and none of them knew me personally. They didn't even sign any documents confirming the alleged statements they supposedly gave Biswood. There was no affidavits on file at the Lauderhill police department from any complainant regarding me pertaining to the April 17, 20- 14 incident or any other incident.

9 of 10

39). When I got back my cell phone the video of the white encounter with the police was deleted. I did not delete the video and only Ramos and Mancho Ola knew I was recording the encounter.

40) I never became agitated and shouted antihomosexual slurs at Jackson as he paced walking or jogging nor did I ever become hostile, prepared to fight Jackson and did not have a knife in my hand stabbing in the air at Jackson. These are all false claims by Beckford.

41) As Jackson jogged through the park I never burst into a tirade of antihomosexual slurs directed at Jackson and never called him a batty boy and exit my vehicle as he claimed. This is a false claim by Jackson.

42) I never stated to Bigwood that I hated homosexuals and did not agree that I was shouting antihomosexual slurs and reciting specific lyrics from Boom Bye, Bye, as claimed by Bigwood. This is a false claim by Bigwood.

43) My behavior never varied from calm to angry and I never expressed feelings of conspiracy that that random citizens and police were targeting him without specific cause as Bigwood claim. This is another false statement by Bigwood.

44) The April 17, 2014 incident at another park did

10 OF 19 pp

not involve any patron complaining that I was shouting homosexual slurs at them or acting aggressively. This is another false statement by Bigwood.

(45) I never became combative and stated to Bigwood nor any of the other officers that "I'm not fucking going anywhere" and then claimed and complied with police orders as claimed by Bigwood. This again is another false statement made by Bigwood.

(46) Prior to December 15, 2014 no mental health professional ever certified that Plaintiff met the criteria for involuntary examination.

(47) During the conversation between Bigwood and myself regarding Bigwood's decision to forcefully baker act Plaintiff Plaintiff expressed his belief that Bigwood's decision to arrest him for the purpose of baker acting him is a conspiracy between Bigwood and the other officers, especially Manchola, and the complainants but specifically the officers because of Plaintiff's past and present pending lawsuits against Lauderhill police officers, especially Manchola who Plaintiff had a pending law suit against. That Bigwood's decision to arrest Plaintiff was a conspiracy to retaliate against Plaintiff to cause him mental anguish and hardship and to disrupt and hinder Plaintiff from timely filing a response in court in the case against Manchola which a set pending court date for Plaintiff to respond to Manchola's motion to dismiss.

11 OF 19 PP

48) Between December 15, 2014 and December 19, 2014 after Plaintiff was released from the mental facility and getting back his car Plaintiff suffered humiliation and embarrassment because there were many park patrons inside and outside the park stopping and watching the arrest and laughing at me while making slick comments. I continued to suffer humiliation and embarrassment while at the mental facility.

49) That the whole incident, arrest and Baker acting caused Plaintiff emotional stress and anguish for four days. Plaintiff was frightened and worried about what would transpire during the Baker Act, how long would they keep him and if he would ever be released from the Baker Act facility.

50) The arrest and Baker Acting caused Plaintiff alot of hardship in that, upon release from the mental facility Plaintiff did not have access to his vehicle and had no money to pay to get his vehicle from the tow truck company. Plaintiff would have to walk long distances to borrow the money and to get to where his car was impounded.

51) Plaintiff's record of being Baker Acted coupled with the false statements in the arrest records have caused Plaintiff to not get employment. Potential employers they see plaintiff as a trouble maker and a mental case that their insurance policy would not cover.

12 of 19 pp.

## COUNTS THREE

(52) It is Plaintiff's complaint that defendants Yopps, Ramos and Biswood, in their official capacity, did violate Plaintiff's Fourth Amendment Right to be free from arrest and involuntary Baker acting without probable cause and his First Amendment right to free speech in a park when they arrested and involuntary Baker acted plaintiff without probable cause pursuant to the City of Lauderhill's policy that authorized them to be the Final policy makers giving them the sole discretion to involuntary Baker act individuals, without supervision, review or constraint by official policy regarding how they must determine that an individual meet the criteria for involuntary Baker Acting - That is what conduct Justifies involuntary Baker Acting an individual. Plaintiff is suing these defendants in their official capacities.

## COUNTS FOUR

(53) It is Plaintiff's complaint that the City of Lauderhill is liable for defendants Yopps, Ramos and Biswood's violation of plaintiff's Fourth Amendment right - not to be arrested and involuntary Baker acted - and his First Amendment Right to free speech in a park without probable cause because the City of Lauderhill authorized its officers the Final policy makers for involuntary Baker acting individuals, via its policy, without supervision, review of decision or constraint by official policy regarding what conduct Justifies or meets the criteria for involuntary Baker

13 OF 19 PP

Baker Acting. Plaintiff is suing the defendants in the city's official and individual capacities.

Supporting Facts

54) Lauderhill police department field training program incident guide mentally ill/Baker Act policy No. IG-29 give Lauderhill police officers sole discretionary authority to determine if a person meets the criteria for involuntary examination - that is Baker Acting. - An objective review of this policy would show that the defendants were given the sole discretionary authority to determine the following: if there exist a reason to believe a persons has a mental illness; that is causing them to refuse voluntary examination or not to be able to determine whether examination is necessary; that without treatment or care the person would likely suffer neglect or refuse to care for their self. That such would present a threat of substantial harm to themselves and law enforcement must determine if there is a substantial likelyhood that without care or treatment the person would cause serious bodily harm to him self or herself or others in the near future evidenced by their recent behavior. F.S.S. 394.463; Policy No. IG-29

55) According to policy no. IG-29 when the officers determine that the person meets the criteria for involuntary Baker Acting they shall take them to the nearest mental health facility for an involuntary examination and the officer may use hand cuffs.

14 of 19 pp

56) Clearly policy ny IG-29 does not require Lauderhill police officers to be supervised while making their determination. It does not require the officers determinations to be reviewed and it puts no constraints on the officers discretion.

57) On June 7, 2020 all three defendants answered Plaintiff first interrogatory to them in which Plaintiff asked them if they had the sole discretion to determine if Plaintiff or any citizen meets the criteria for involuntary examination pursuant to the Baker Act. All three defendants answered in the Affirmative and that once they made that determination, says, the could commit the person for an involuntary mental health examination pursuant to the Baker Act.

58) According to Mandel v Doe 888 F2d 783, 792 (11th cir. 1989) "A Local government is liable under section 1983 when execution of a governments policy or custom, whither made by its law makers or by those whose edicts or acts may fairly be said to represent official policy inflicts the injury". "Recovery from a Municipality is limited to acts that are, properly speaking, acts of the municipality — that is, acts which the municipality has officially sanctioned or ordered."

59) According to City of St. Louis v. Praprotnik, 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed. 2d 107 (1988) the court sought to clarify the question of "when a decision on a single occassion maybe enough to establish an

unconstitutional municipal policy." 485 U.S. 123, 108 S. Ct. at 924. The Court in Praprotnik held that a municipality could not be held liable for the unconstitutional transfer of a city employee where the officials who arranged the transfer did not possess final policymaking authority with respect to employment decisions and had not been delegated such authority. 485 U.S. at 127, 108 S.Ct. at 926. The Court concluded that the mere delegation of authority to a subordinate to exercise discretion is not sufficient to give the subordinate policymaking authority. Rather, the delegation must be such that the subordinate's discretionary decisions are not constrained by official policies and are not subject to review. Praprotnik 485 U.S. at 125-28, 108 S.Ct. at 925-26.

(60) Clearly, in the instant case Bigwood, Yopps and Rothas were all final policymakers because they were not merely given the authority to use their discretion when making a determination regarding whether an individual meets the criteria for involuntary examination pursuant to the Baker Act but they were given the sole discretionary power to make such a determination, supra, without constraint by official policies and their determination was not subject to review - once they made their determination they could forcefully commit anyone to a mental health facility for a mental health examination.

16 OF 19 pp

(61) Plaintiff invokes the supporting facts under counts one and two of this Amended Complaint as facts that should be considered by this Court when determining count three and four. Plaintiff believes those facts are applicable, because they demonstrates that the defendants did violate plaintiffs first Amendment Right to free speech and his fourth Amendment Right to be free from arrest and Baker acting without probable cause. These these facts demonstrates what violations the city is liable for. See pages 4-12 of this Third Amended Complaint.

### Prayer For Relief

Wherefore Plaintiff respectfully ask that this court enter Judgment granting Plaintiff the following:

(62) Compensatory damages in the amount of one million dollars ($1,000,000.00) from each of the defendants Yopp, Ramus and Bigwood totalling three million dollars ($3,000,000.00) and the defendant City of Lauderhill pay plaintiff five million dollars ($5,000,000.00) for the defendants role in the arrest and Baker Acting me on false, fabricated reasons and without probable cause; their violation of my constitutional rights alleged herein, the four days of my freedom that was taken from me, for the humiliation, embarrassment, mental distress, anguish and hardships I suffered as a result of the defendants violation and conduct and for plaintiff not being able to get employment due to the arrest and Baker acting.

17 of 19

63) Punitive damages in the amount of ($2,000,000.00) two million dollars from Defendants Yoppi, Ramos and Biswood each totalling ($6,000,000.00) six million dollars for their malicious arrest and Baker Acting of me that was based on retaliations and intended to cause and did cause tangible and intangible serious injury that was willfully and knowingly indifferent to plaintiff's constitutional rights. Punitive Damages should also be paid to deter and discourage the defendants and other officers from similar and same conduct.

64) Plaintiff seek a Jury trial on all issues alleged herein.

65) Any other relief deemed just, proper and equitable that is favorable to plaintiff.

Respectfully filed this 24 day of August 2020.

Eric Watkins
7990 Hampton Blvd, Apt 110
North Lauderdale Florida
33068

Verification

66) I Eric Watkins is the Plaintiff and undersigned
18 of 19 pp

in this civil complaint and declares that I have read the foregoing complaint and hereby verify and claim that the matters alleged herein are true, except to matters alleged on information or belief, and as to those, I believe them to be true. I certify under the penalty of perjury that the foregoing is true and correct.

Executed at FT Lauderdale Florida on August 24 2020.

/s/ Eric Watkins

Certificate of Service

I hereby certify that a true and correct copy of the foregoing has been served on the defendants via their attorney Anne R. Flanigan's email address aflanigan@wsh-law.com and this Courts CM/ECF Filing system on August 24, 2020.

Eric Watkins