UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-CV-63035-BLOOM/STRAUSS

ERIC WATKINS,

    Plaintiff,

v.

SERGEANT M. BIGWOOD, *et al.*,

    Defendants.

_____/

## ORDER ON DEFENDANTS MOTION TO OVERRULE ERIC WATKINS' OBJECTION TO SUBPOENA DUCES TECUM

THIS CAUSE comes before the Court upon Defendants' Motion to Overrule Plaintiff, Eric Watkins' Objection to Subpoena *Duces Tecum* (the "Motion"). (ECF No. 82). U.S. District Judge Beth Bloom has referred discovery matters to the undersigned. (ECF No. 27; ECF No. 92). The undersigned has reviewed the Motion and Plaintiff's Response (ECF No. 86), and being otherwise fully advised in the matter, it is hereby ORDERED that Defendants' Motion is GRANTED IN PART.

    **I.**    **BACKGROUND**

This action arises out of Plaintiff's involuntary commitment in the Florida Medical Center for a mental health evaluation on December 15, 2014. *See generally* (ECF No. 76). On August 24, 2020, Plaintiff filed a four-count Third Amended Complaint, alleging First and Fourth Amendment violations against the Individual Defendants and the City of Lauderhill (the "Third Amended Complaint"). *Id.* Plaintiff asserts, *inter alia*, that he was "in bad faith arrested and seized . . . pursuant to Florida statute 394.463 (the Baker Act) in spite of the fact that no mental health professional certified that [he] met the criteria for involuntary examination. There was no

other valid of viable reason(s) to believe that Plaintiff had a mental illness which caused him to refuse voluntary examination . . ." (*Id.* ¶ 9). Plaintiff claims that "[p]rior to December 15, 2014, no mental health professional ever certified that Plaintiff met the criteria for involuntary examination." (*Id.* ¶ 47). In his claim for damages, Plaintiff contends that he "suffered humiliation and embarrassment" and that "the whole incident, arrest and Baker acting caused Plaintiff emotional stress and anguish for four days" in which Plaintiff was "frightened and worried." (*Id.* ¶¶ 48 – 49). In his prayer for relieve, Plaintiff requests monetary relief for "Baker Acting [him] on false fabricated reasons and without probable cause," and for the "mental distress, anguish and hardships [he] suffered" because of it. (*Id.* ¶¶ 62).

On September 15, 2020, Defendants issued a Rule 45 subpoena *duces tecum* to the Florida Medical Center, seeking production of "[a]ny and all documents relating to [Plaintiff]," including his medical records. (ECF No. 82-1, Ex. A). Plaintiff verbally advised the records custodian of the Florida Medical Center that he did not want his records produced, which Florida Medical Center construed as a constructive objection to production. (ECF No. 82-4 at 1). The instant motion by Defendants followed. (ECF No. 82).

**II.    DISCUSSION**

Defendants contend that this Court should overrule Plaintiff's objections to the production of his medical records because it is a "critical question in this matter [ ] whether . . . [Defendants] reasonably perceived probable cause to subject Plaintiff to an involuntary examination under the Baker Act." (ECF No. 82 at 2) (quoting *Greer v. Hillsborough Cty. Sheriff's Office*, No. 806-CV-213-T-23MSS, 2006 WL 2535050, at *2 (M.D. Fla. Aug. 31, 2006)). Defendants assert that "Plaintiff has waived the psychotherapist-patient privilege by placing his mental state at issue" when "asserting that his December 14, 2015 [sic] Baker Act was not legally supported," and that the medical records "go directly to that claim and Defendants' affirmative defenses." *Id.* at 2-3.

2

In addition, Defendants allege that "Plaintiff has directly placed his mental state at issue by asserting that he suffers "mental anguish" from the actions of Defendants. *Id.* at 2. Defendants also argue that records relating to treatment *before and after the actual arrest* on December 15, 2014 are relevant because they "may tend to support Defendants' position that there was, in fact, reason to believe that a mental health examination was necessary for Plaintiff's wellbeing and/or that of others." *Id.* at 2-3.

Plaintiff contends that Defendants' seeking of his medical records violates the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), arguing that Defendants were required to provide Plaintiff with a HIPAA release of medical records before contacting the Florida Medical Center and that, upon his objection, Defendants should have filed a motion to compel instead of the instant motion to overrule Plaintiff's objections. Plaintiff further argues that the documents are not relevant to the issues in the instant litigation, as Plaintiff did not put his mental state at issue. Finally, Plaintiff asserts that the Defendants' request is overbroad and must be narrowed specifically to Plaintiff's medical records that pertain to the involuntary examination in the context of the happenings on December 15, 2014. *See generally* (ECF No. 86).

### A. The Motion to Overrule Objection is Appropriate

Initially, this Court finds unpersuasive Plaintiff's claim that the issuance of a subpoena *duces tecum* and the filing of the instant Motion to overrule his objection to such subpoena were procedurally inappropriate. The Court similarly finds that HIPAA does not bar Defendants from obtaining the requested records even without Plaintiff's consent. In *Heimler v. Walgreen Co.*, No. 14-14043-CIV, 2014 WL 12774849 (S.D. Fla. Sept. 22, 2014) (Marra, D.J.), the court described more specifically discovery of medical records under HIPAA:

> HIPAA provides three mechanisms for discovery of health care information in civil litigation. These are: (1) patient authorization; (2) court order; and (3) certain types of subpoenas or discovery requests. The regulations to HIPAA state that health care

3

> providers may not "disclose protected health information except as permitted or required by this subpart or by subpart C of the part 160 of this subchapter." 45 C.F.R. § 164.502(a). With respect to judicial or administrative proceedings, HIPAA regulations permit disclosure by an order from a court or administrative tribunal. 45 C.F.R. 164.512(e)(1).
>
> In response to a subpoena, discovery request or other lawful process that is not accompanied by an order of a court or administrative tribunal, private health care information may only be disclosed if reasonable efforts have been made to ensure that the individual who is the subject of the protected health information has been given notice of the request or a qualified protective order has been obtained. 45 C.F.R. 164.512(e)(1)(ii).

*Id*. at *3. Here, on September 15, 2020, Defendants issued a subpoena *duces tecum* to the Florida Medical Center. (ECF No. 82-1 at 1). While Plaintiff might have preferred to receive a request for prior authorization, it is not the only option under HIPAA. Defendants' method of obtaining information through a subpoena *duces tecum* is just as viable under 45 C.F.R. 164.512(e)(1)(ii), as long as Plaintiff is sufficiently notified. Plaintiff clearly had sufficient notice, as he was able to file his objections prior to disclosure.

If the notified Plaintiff objects to the release of the requested documents, a motion to overrule such objection is a feasible way to try to get access to the documents. Indeed, it is the appropriate procedural tool in the context of third-party discovery, where (as here) the third party (Florida Medical Center) is generally willing to provide the documents but prevented to do so due to the party's objection. *See, e.g., Matter of Bavelis*, No. 17-CV-61269, 2020 WL 4003496, at *3 (S.D. Fla. July 15, 2020) (granting motion to overrule objections to subpoena *duces tecum* overruling defendants objection to plaintiff's discovery requests to third party bank); *see also Engelhardt v. Svensk Mgmt., Inc.*, No. 08-62063-CIV, 2009 WL 10667463, at *3 (S.D. Fla. June 9, 2009) (ultimately denying motion to overrule plaintiff's objections to subpoena *duces tecum* to produce medical records as overbroad). Thus, the Court finds that Defendants' approach to addressing Plaintiff's objections is proper.

Furthermore, contrary to Plaintiff's position, HIPAA does not prevent disclosure of his medical records if he does not consent. As previously detailed, disclosure may occur by subpoena or by Court order. Moreover, as discussed below, disclosure is appropriate if the records are relevant and proportional.

### B. Whether the Medical records are Relevant and Discoverable[1]

Under Rule 26, parties may discover "... any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case..." Fed. R. Civ. P. 26(b)(1). Courts have generally concluded that "[a] defendant is entitled to the production of medical records that have 'a logical connection to the Plaintiff's claim of injuries.'" *Sherlock v. Fontainebleau*, 229 F. Supp. 3d 1277, 1282 (S.D. Fla. 2017) (citation omitted). There is no doubt that Plaintiff's mental condition has a logical connection to his claim that he was involuntarily committed in a mental health facility without probable cause. The Court also finds that Plaintiff's claim has placed his mental state at issue, and thus Plaintiff has waived any psychotherapist-patient privilege regarding the requested records.

First, the records are relevant because, as Defendants assert, Plaintiff's Florida Medical Center records may tend to support that Baker Acting Plaintiff, under Fla. Stat. 394.463, was necessary. (DE 82 at 2-3). Florida Statute 394.463 states in pertinent part:

> 394.463   Involuntary examination.—
> (1) CRITERIA.—A person may be taken to a receiving facility for involuntary examination if there is reason to believe that the person has a mental illness and because of his or her mental illness:

---

[1] Plaintiff argues that that the medical records requested by Defendants are not "relevant" and that the "medical records in no way can show that the [D]efendants had probable cause or arguable probable cause to involuntary [sic] Baker Act [him]." (ECF No. 86 at 4). Plaintiff explains that the records are not relevant because the medical facility personnel were not at the park to witness his behavior in order to justify that there was probable cause for Baker Acting him. *Id.* at 4-5. Because Plaintiff is a pro se filer, the Court construes Plaintiff's explanations accordingly.

5

>   (a)1. The person has refused voluntary examination after conscientious explanation and disclosure of the purpose of the examination; or
>
>   2. The person is unable to determine for himself or herself whether examination is necessary; and
>
>   (b)1. Without care or treatment, the person is likely to suffer from neglect or refuse to care for himself or herself; such neglect or refusal poses a real and present threat of substantial harm to his or her well-being; and it is not apparent that such harm may be avoided through the help of willing family members or friends or the provision of other services; or
>
>   2. There is a substantial likelihood that without care or treatment the person will cause serious bodily harm to himself or herself or others in the near future, as evidenced by recent behavior.

Fla. Stat. § 394.463(1). Because Defendants claim that they had probable cause under the Baker Act for Plaintiff's involuntary commitment due to their perception that, due to mental illness, he would harm himself or others without care or treatment, the medical records from that involuntary commitment are relevant and should be produced. In addition, Plaintiff's history of mental health, to the extent evidence of such exists, is relevant to whether Defendants likely observed (or not) sufficient indication of mental illness to provide probable cause for the complained-of Baker Act arrest. Therefore, Plaintiff's objection on the basis of relevance, is **OVERRULED**.

Second, Plaintiff's medical records are discoverable because Plaintiff has waived any psychotherapist-patient privilege regarding the requested records by placing his mental health at issue. "Federal evidentiary privileges in federal question litigation arising in federal court are governed by federal law." *Jordan v. Comm'r, Miss. Dep't of Corr.*, 947 F.3d 1322, 1336 (11th Cir. 2020). Plaintiff filed suit under 42 U.S.C. § 1983, claiming that Defendants, acting under color of state law, deprived him of constitutionally protected rights. Consequently, because federal question jurisdiction applies, he must rely on privileges developed by the federal courts.

Although no federal statute or federal rule expressly protects psychotherapist records from

disclosure, the Supreme Court recognized a federal common law psychotherapist-patient privilege under Rule 501 of the Federal Rules of Evidence. *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996). The *Jaffee* Court further noted that the psychotherapist-patient privilege can be waived, although it did not decide what would constitute a waiver. *Id*. at 15 n. 14. "Since the Supreme Court decided *Jaffee*, most courts have held that a party waives the psychotherapeutic-patient privilege by placing his or her mental condition at issue." *Chase v. Nova Se. Univ., Inc.*, No. 11-61290-CIV, 2012 WL 1936082, at *1–2 (S.D. Fla. May 29, 2012) (citing *Gaines–Hanna v. Farmington Pub. Sch.*, No. 04–CV–74910–DT, 2006 WL 932074, at *8 (E.D.Mich. April 7, 2006) ("Case law is clear that a party waives the federal common law psychotherapist-patient privilege by placing his or her mental condition at issue.")). District courts in the Eleventh Circuit "routinely hold that a party waives the psychotherapist privilege by alleging that he suffers from a mental impairment, or by bringing a claim that requires proof of a mental impairment." *Jacobson v. City of W. Palm Beach*, No. 16-CV-81638, 2017 WL 11549934, at *1 (S.D. Fla. Jan. 12, 2017).

Plaintiff placed his mental condition at issue by bringing a claim under 42 U.S.C. 1983 alleging that his involuntary commitment in a mental hospital occurred without probable cause.[2]

---

[2] Plaintiff's mental condition was not put at issue when he made demands for relief based on mental pain and suffering. (ECF No. 76 ¶ 49, 62). Courts have consistently held that a "garden-variety" claim of mental anguish, i.e., "ordinary or common place emotional distress" which is "simple or usual" is not sufficient to place the mental condition at issue. *See, e.g., Chase*, 2012 WL 1936082 at *4 (citations omitted). To assist with the final determination on whether a Plaintiff who is seeking damages for mental pains and suffering, courts usually apply the "Turner-test," analogous to, and generally consistent with, the analysis conducted when a Rule 35(a) examination is requested. *Id.* The party seeking to subpoena medical records must demonstrate that the party to be examined has claimed emotional distress and the presence of one or more of the following with respect to the proposed examinee: (1) a claim for intentional or negligent infliction of emotional distress, (2) an allegation of a specific mental or psychiatric injury or disorder caused by the alleged conduct, (3) a claim of "unusually severe" emotional distress, (4) an intent to offer expert testimony regarding the claimed emotional distress, or (5) a concession that the mental condition is "in controversy." *Turner v. Imperial Stores*, 161 F.R.D. 89, 95 (S.D. Cal. 1995)). Because none of the Turner-factors are present in the instant case, Plaintiff's "mental condition" has not been put

7

Plaintiff argues in the Third Amended Complaint that he was "without probable cause . . . in bad faith arrested and seized . . . pursuant to Florida statute 394.463 (the Baker Act) in spite of the fact that no mental health professional certified that [he] met the criteria for involuntary examination. There was no other valid or viable reason(s) to believe that Plaintiff had a mental illness which caused him to refuse voluntary examination . . ." (ECF No. 76 ¶ 9)." However, the mental state of a person is a significant factor for the evaluation of "involuntary examination" and commitment under the "Baker Act." Indeed, the "reason to believe" that a person has a mental illness, and the surrounding incapacity to make necessary decisions, or the potential to harm themselves, ultimately permits or prohibits examination and commitment under such law. Fla. Stat. § 394.463. The documents requested – by either confirming that Plaintiff does suffer from a mental illness or by documenting potential signs of mental illness that the Plaintiff may exhibit – thus may tend to support Defendants' position that they had reason to believe that a mental health examination was necessary to prevent harm to Plaintiff and/or others.

In addition, Defendants also raise various affirmative defenses that permit inspection of the mental state of Plaintiff at and before December 15, 2014. For example, Defendants allege in their Answer and Affirmative Defenses to Third Amended Complaint that "the Officers had probable cause and/or arguable probable cause to Baker Act Plaintiff" (Sixth Affirmative Defense), and that "disability, trauma, or injuries alleged by Plaintiff are the result of one or more preexisting conditions, or were caused by one or more subsequent injuries, and were not caused or aggravated by any of the alleged acts or omissions of the Officers" (Twelfth Affirmative Defense). (ECF No. 77). Consequently, the medical records go directly to that claim and Defendants' affirmative

---

at issue by his garden variety mental anguish-claim.

defenses. Plaintiff's mental condition is squarely at issue in the instant case, and by bringing the case Plaintiff has waived the psychologist-patient privilege.

### C. The Request is Overbroad

Plaintiff next contends that the records sought by Defendants are overbroad and must be narrowed specifically to medical records that pertain to the involuntary examination at Florida Medical Center in the context of the December 15, 2014 admission.[3] *See* ECF No. 86 at 2. While the Court disagrees that Defendants' request must be limited strictly to records of Plaintiff's December 15, 2014 commitment, the Court agrees that the request should be narrowed in terms of time and scope. *See, e.g.*, *Bortolotti v. Gracepoint*, No. 8:19-CV-1072-T-24AAS, 2019 WL 6173173, at *4 (M.D. Fla. Nov. 20, 2019) (granting motion to compel information about treatment for mental health or substance abuse for a five-year period).

Here, the arrest underlying Plaintiff's claims occurred in December of 2014. Defendants claim in their twelfth affirmative defense that the "disability, trauma, or injuries alleged by Plaintiff are the result of one or more preexisting conditions, or were caused by one or more subsequent injuries, and were not caused or aggravated by any of the alleged acts or omissions of the Officers." (ECF No. 77 at 10). Thus, the Court concludes that medical records going back as far as 5 years before the incidents (to December 14, 2009) and after that incident are appropriate.

However, nothing in the case indicates that Defendants should have access to information beyond the medical records. In their subpoena, Defendants request, for example, clothing and

---

[3] Plaintiff's Response refers in places to an April 15, 2015 Baker Acting (ECF No. 86 at 3); however, Plaintiff's Response also references a December 15, 2014 Baker Acting consistent with his allegation in the Third Amended Complaint. (ECF No. 76 at 3). *See* ECF No. 86 at 5 (discussing Defendants' "quest for [Plaintiff's] medical records" and Plaintiff's "one encounter with the Florida Medical Center . . . on Dec. 15, 2014 [–] the day of the Baker Acting"). The Court construes Plaintiff to be referencing his arrest and involuntary commitment on December 15, 2014.

valuable inventory lists, office records, billing records, and all other written documents whatsoever. In addition, Defendants request "notification of the existence of all records of drug testing and all other documents of a confidential nature," yet do not allege that Plaintiff abuses drugs. The Court finds these request for these categories of records overbroad in scope and will limit the request to the medical records of Plaintiff, during the stay succeeding the involuntary admission on December 15, 2014, since that stay, and the five years preceding the stay.

### III.   CONCLUSION

In conclusion, Defendants' Motion to Overrule Plaintiff's Objections to Subpoena *Duces Tecum* is **GRANTED IN PART**. (ECF No. 82). The Florida Medical Center is **ORDERED** to produce Plaintiff's medical records (as described in Attachment A to the subpoena *duces tecum*, with the exception of clothing and valuable inventory lists, office records, billing records, and drug testing records) to Defendants **within ten (10) days** from the date of this Order.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 17th day of November, 2020.

*Jared Strauss*
Jared M. Strauss
United States Magistrate Judge

cc:  U.S. District Judge Beth Bloom
All counsel of record